**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Edward David Stahlmann,

    Plaintiff,

v.

Minnesota Department of Corrections, et al.,

    Defendants.

Case No. 22-cv-3058 (ECT/DTS)

**REPORT AND RECOMMENDATION**

## INTRODUCTION

Plaintiff claims Defendants were deliberately indifferent to his serious medical needs by delaying prescribed, necessary medical treatment for a severe urologic condition, causing him great pain and suffering. He asserts causes of action arising under the United States and Minnesota Constitutions and under state statutes and common law. He seeks compensatory and punitive damages and a court order granting him conditional medical release. Defendants argue Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted. The Court recommends Defendants' motion be granted in part and denied in part.

## FACTS[1]

### I. Plaintiff's Medical Condition

Plaintiff is an inmate at the Minnesota Correctional Facility in Faribault, Minnesota (MCF Faribault), operated by Defendant Minnesota Department of Corrections. Compl.,

---

[1] Because, on a motion to dismiss, the Court accepts as true all well-pleaded facts and all reasonable inferences arising therefrom, the facts recited in this section are taken from Plaintiff's Complaint. *See*, *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022).

¶ 3, Dkt. No. 1. Defendant Paul Schnell is the Commissioner of Corrections. *Id.* ¶ 7. The remaining individual defendants are correction employees who work at MCF Faribault: Tracy Beltz is the Warden; Michelle Paulson is the Nursing Supervisor; and Ann Blanchard is the Director of Clinical Operations (the DOC Defendants). *Id.* ¶¶ 4-6. Defendant Centurion provides contracted healthcare services at MCF Faribault. *Id.* ¶ 8.

Plaintiff alleges Defendants knew of Plaintiff's medical condition upon intake in April, 2020. *Id.* ¶ 13. On or about March 30, 2021, Plaintiff was hospitalized for "urinary catheterization problems causing severe pain, and extensive bleeding." *Id.* ¶ 14. He was originally transported to District One Hospital in Faribault. *Id.* ¶ 16. There, he was evaluated by medical staff who determined he needed specific and immediate urologic care, which District One could not then provide. *Id.* ¶ 17. Plaintiff was taken by ambulance to Abbott Northwestern Hospital in Minneapolis, where he was admitted and treated for approximately two days. *Id.* ¶¶ 18, 19. He was discharged from Abbott Northwestern Hospital on April 1, 2021. *Id.* ¶ 20. His discharge instructions recommended he be scheduled for a follow-up appointment with a urologist within two weeks. *Id.* This follow-up appointment was not scheduled.[2]

Seven months later, on November 1, 2021, Plaintiff again experienced "severe pain and bleeding with urinary catheterization issues." *Id.* ¶ 22. Plaintiff was seen by Centurion's Dr. Shaman, who ordered he be taken to the District One Hospital in Faribault. *Id.* ¶ 25. At the hospital Plaintiff had a Foley catheter inserted. *Id.* ¶ 26. His discharge instructions again recommended he be seen by a urologist, this time within 7 days. *Id.*

---

[2] The Complaint does not specifically allege the failure to schedule the follow-up but that is the only reasonable inference to be drawn from the facts alleged. *See* Compl., ¶¶ 20, 22, 31.

¶ 28. The next day, Plaintiff had a follow-up appointment with Dr. Shaman who asked Plaintiff why he had not been seen by a urologist following his first hospitalization in April 2021. *Id.* ¶ 31.

Two days later, on November 4, 2021, Plaintiff experienced extreme pain in his lower abdomen when walking and requested a medical appointment. *Id.* ¶ 32. On November 6, Plaintiff's mother called Defendants Beltz's and Schnell's offices to inquire why Plaintiff had not yet been seen by a urologist. *Id.* ¶ 33.[3] On November 8, Plaintiff informed nursing staff of his "on-going and continuous lower abdominal pain while walking" to which he was told he would be seen by Dr. Shaman the following day, but was not. *Id.* ¶ 34.

On November 10, Plaintiff was moved from a lower bunk to an upper bunk, which caused him additional pain and worsened his condition. *Id.* ¶ 36. On November 11, he developed a fever, chills, and nausea, and had to be supplied with clean bedding after vomiting on himself and drenching the sheets. *Id.* ¶ 38. Plaintiff was evaluated by nursing staff the next day. *Id.* ¶ 39. His blood pressure was elevated and he was "pasty white." *Id.* Nursing staff took a urine sample, consulted Dr. Lorbiecki, who prescribed an antibiotic, and stated they would schedule Plaintiff to see Dr. Shaman. *Id.* ¶ 40. Over the next two days, though his pain worsened, Plaintiff was not scheduled to see Dr. Shaman. *Id.* ¶ 41. On November 17, Plaintiff saw Dr. Lorbiecki, who told Plaintiff he had contracted a urinary tract infection. *Id.* ¶ 42. On November 24, 2021, Plaintiff was finally seen by a urologist, Dr. Leila Tabibian, at HealthPartners Specialty Clinic in Saint Paul. *Id.* ¶ 43.

---

[3] Again Plaintiff's Complaint uses different language but this is the clear (and reasonable) inference to be drawn.

Dr. Tabibian expressed concern over the lengthy delay in having Plaintiff evaluated by a specialist. *Id.* ¶ 44. The appointment with Dr. Tabibian did not occur until 18 months after Plaintiff's intake, eight months after his initial hospitalization and referral, and almost a month after his second hospitalization and referral. Plaintiff alleges this delay caused him unnecessary severe pain and suffering. *Id.* ¶ 46.

On January 11, 2022, Plaintiff again experienced severe pain, as well as urethral bleeding and was sent to the hospital. *Id.* ¶¶ 48-49. At the hospital, a Foley catheter was inserted and Plaintiff was again discharged with instructions to be seen by a urologist within two weeks. *Id.* This appointment was scheduled for March 31, 2022, eleven weeks out. *Id.* ¶ 51. When Plaintiff arrived at the appointment, however, he was informed that someone from Corrections had cancelled it, and he was not seen. *Id.* He was ultimately seen by Dr. Tabibian on April 18, 2022, at which time Dr. Tabibian recommended he undergo a "urodynamic study" within "the next few weeks." *Id.* ¶¶ 61-62. Plaintiff's mother then contacted Defendant Paulson to ask when the study would be scheduled and was told Paulson would look into it. *Id.* ¶ 64. A month later, on May 23, 2022, Dr. Shaman approved the referral for the study and ordered it be completed no later than August 6, 2022. *Id.* ¶ 63.

On June 23, 2022, Plaintiff requested a medical appointment for severe abdominal pain. *Id.* ¶ 52. On June 28, 2022, Plaintiff's mother again contacted Paulson to inquire about the urodynamic study and was told it had been requested but not yet scheduled. *Id.* ¶ 65. Plaintiff was seen by health services on June 30, at which appointment he was scheduled to see Dr. Shaman on July 5. *Id.* At the July 5 appointment Dr. Shaman recommended Plaintiff be placed on a lower bunk restriction. *Id.* ¶ 54. Plaintiff continued

to experience severe pain and was seen again on July 19, 2022. *Id.* ¶ 55. Again, Dr. Shaman recommended a lower bunk restriction. *Id.* Plaintiff was finally moved to a lower bunk on July 23, 2022. *Id.* ¶ 60.

Plaintiff experienced severe pain and copious urethral bleeding again on August 22, 2022. *Id.* ¶¶ 66, 73. After several hours' delay Plaintiff was seen by Dr. Shaman, who immediately sent him to the hospital. *Id.* ¶¶ 67-76. A Foley catheter was inserted at the hospital and Plaintiff was discharged with instructions that he be seen by a urologist "as quickly as possible." *Id.* ¶¶ 77, 78. On August 31, 2022, Plaintiff saw urologist Dr. Tabibian, who voiced concern that the urodynamic study had yet to be performed. *Id.* ¶ 80. On September 14, 2022, Plaintiff's mother called Defendant Paulson to inquire why the study, which had been ordered to be performed by August 6, had not yet happened. *Id.* Paulson told her she was "not entirely sure why it hasn't been completed yet." *Id.* ¶ 81.

On October 31, 2022, Plaintiff experienced "excruciating abdominal pain," immediately requested a medical appointment, for which he was not seen until November 29, 2022, almost a month later. *Id.* ¶¶ 83, 88. At that time Dr. Shaman again sent Plaintiff to the emergency room. *Id.* ¶ 88. Though Plaintiff does not allege what transpired at the hospital, the Court infers Plaintiff was treated and returned to MCF Faribault.

Meanwhile on November 4, Plaintiff's mother again called Defendant Paulson regarding the delay in scheduling the urodynamic study. She did not hear back. *Id.* ¶ 86. On November 28, she again contacted Defendants Paulson and Beltz about the study.

*Id.* As of December 9, 2022, the date the complaint was filed, Plaintiff had not yet undergone the urodynamic study that was ordered eight months earlier. *Id.* ¶ 82.

## II.     Plaintiff's Claims

Plaintiff alleges that the course of events described above give rise to several causes of action. First and foremost he alleges that all Defendants were deliberately indifferent to his serious medical needs, thereby violating his right to be free of cruel and unusual punishment under Article 1, Section 5 of the Minnesota Constitution and the Eighth Amendment to the United States Constitution. By virtue of their failure to provide adequate medical care he further alleges that the Defendants have violated his due process rights under Article 1, Section 7 of the Minnesota Constitution and the Fourteenth Amendment to the United States Constitution.

In addition, Plaintiff alleges that Defendant Schnell has violated duties owed under Minnesota Statutes Chapter 241; that Defendants Schnell and the Department of Corrections have violated duties arising under Minnesota Rule 2911.5800, subps. 4, 8; and that Defendants Centurion, Blanchard and Paulson committed "the tort of negligence" (i.e. breached their duty of reasonable care) arising under state common law. *Id.*, Claims For Relief.[4]

Plaintiff seeks four categories of relief in his Complaint: (1) a declaratory judgment against all Defendants that each has violated Plaintiff's rights as alleged in his Complaint; (2) an injunction ordering Defendant Schnell to grant Plaintiff immediate conditional medical release; (3) compensatory damages against all Defendants; and (4) punitive

---

[4] Plaintiff's Complaint is not drafted with lawyerly precision. He has not consistently alleged which Defendants violated which provisions of which laws but appears to assert the claims as described.

damages against all Defendants. Plaintiff has sued the individual Defendants in both their official and individual capacities.

Defendants move to dismiss Plaintiff's Complaint in its entirety.

## ANALYSIS

### I.      The Pleading Standard

When a defendant moves to dismiss an action under Rule 12(b)(6), courts "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be facially plausible, a plaintiff's claims must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though courts construe *pro se* complaints liberally, a *pro se* plaintiff must still allege sufficient facts to support the claims asserted. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### II.     Plaintiff's Federal Constitutional Claims

Pursuant to 42 U.S.C. § 1983 Plaintiff has sued all named Defendants for violation of his federal constitutional rights under the Eighth and Fourteenth Amendments. He alleges claims against the individual Defendants in both their individual and official capacities.

## A.    Claims Against the Department of Corrections

Plaintiff's claims against the Minnesota Department of Corrections are barred by the Eleventh Amendment. The Eleventh Amendment protects states from certain liability by withholding federal court jurisdiction. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). It provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. Despite the phrase "another State," it is will established that "'an unconsenting State is immune from suits brought in federal courts *by her own citizens* as well as by citizens of another state.'" *Port Auth. Trans-Hudson Corp. V. Feeney*, 495 U.S. 299, 304 (1990) (emphasis added). The issue is jurisdictional: under the Eleventh Amendment, federal courts generally lack subject-matter jurisdiction over claims against an unconsenting state. *See Sossamon v. Texas*, 563 U.S. 277, 284 (2011); *Gardner v. Minnesota*, No. 16-cv-3999, 2019 WL 1084714, at *3-4 (D. Minn. Jan. 15, 2019), *report and recommendation adopted*, 2019 WL 1086338 (D. Minn. Mar. 7, 2019). The Eleventh amendment bar to state suits applies unless the state consents to suit or Congress abrogates the state's sovereign immunity, *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004), and federal courts must dismiss suits barred by the Eleventh Amendment. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64-65, 73 (1996).

Congress has not abrogated the states' immunity against claims brought under § 1983, and Minnesota has not waived its Eleventh Amendment immunity. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985); *Smith v. Fabian*, 2012

WL 1004982, at *3 (D. Minn. Mar. 25, 2012) (no waiver of sovereign immunity as to section 1983 claims).

Under the Eleventh Amendment, suits against a state agency are functionally suits against the state itself. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (citing cases); *Hanks v. Hills*, 373 F. Supp. 3d 1230, 1232 (D. Minn. 2017) (citing *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007)), *report and recommendation adopted*, 2017 WL 10243525 (D. Minn. Nov. 27, 2017).

Accordingly, the Minnesota Department of Corrections, which has no separate identity from the state, is immune from suit under the Eleventh Amendment. *See Pate v. Arkansas Dept. of Correction*, 2017 WL 1827712, at *1 (E.D. Ark. Apr. 13, 2017) ("Arkansas Department of Correction is a state agency that is 'the sole creation of the state' and has 'no separate identity' from the state and cannot be stripped of its official character," and therefore is immune from § 1983 liability). Therefore, Plaintiff's claims against the Department of Corrections are barred and must be dismissed.

### B.    Claims Against the Individual Defendants In their Official Capacities

Plaintiff's official capacity claims against the individually named defendants fare no better. Under § 1983 claims against state officials in their official capacity are functionally claims against the state itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). Thus, all of Plaintiff's official capacity § 1983 claims are functionally claims against the State of Minnesota. Section 1983 only allows for money damages against a "person," but a state is not considered a person, and thus Plaintiff's claims for money damages against the

Defendants in their official capacities are barred. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002).

The only relief that is available against a state in a § 1983 claim is prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123 (1908). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Here, Plaintiff's purported request for "injunctive relief" is an order from this Court directing the Commissioner of Corrections, Defendant Schnell, to order Plaintiff's conditional medical release so that he can obtain necessary medical treatment. This form of alleged injunctive relief is not available in a § 1983 action. Section 1983, though a proper vehicle for challenging the conditions of confinement, is not a proper vehicle for challenging the fact or length of that confinement. *Preiser v. Rodriquez*, 411 U.S. 475, 499 (1973). A writ of habeas corpus is the sole remedy for an inmate who challenges the duration of his physical imprisonment and seeks release from incarceration. *Id.* Since Plaintiff's purported injunctive relief seeks his immediate release from prison it is not available in this § 1983 action. As a consequence the request must be denied and all claims against the Department of Corrections and its officials acting in their official capacities must be dismissed.

### C. Constitutional Claims Against Centurion

Plaintiff seeks an award of money damages against Defendant Centurion of Minnesota, a private state-contracted provider of healthcare services to inmates at MCF-Faribault. He alleges that Centurion was acting under color of state law. Compl., ¶ 8. Plaintiff has not named Centurion's employees, Dr. Shaman and Dr. Lorbiecki, as defendants in this lawsuit.

While § 1983 generally protects constitutional rights from government infringement, a private party acting under color of state law, like Centurion, may be liable under § 1983 if it had a "policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also Burke v. North Dakota Dept. of Corrections and Rehabilitation*, 294 F.3d 1043 (8th Cir. 2002); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993).

Here, Plaintiff has not alleged any policy, custom or practice maintained by Centurion violated his rights. Indeed, to the extent Plaintiff alleges any facts related to Centurion his allegations concerning Drs. Shaman and Lorbiecki do not appear to accuse them of deliberate indifference, let alone actionable conduct based on the implementation of Centurion policies or customs. Accordingly, Plaintiff's Complaint has failed to state a claim under § 1983 against Centurion and his federal constitutional claims against it must be dismissed.

### D. Claims Against the Correction's Defendants in Their Individual Capacities

The heart of Plaintiff's complaint is that the individually named Defendants were deliberately indifferent to his serious medical needs. He claims that their deliberate

indifference violated both his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process.

### 1. The Eighth Amendment Claim

The Eighth Amendment requires prison officials to provide "humane conditions of confinement" to safeguard incarcerated persons' health and safety. *Id.* at 832, 837. Prison officials violate the Eighth Amendment when "they commit 'acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs.'" *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007) (quoting *Estelle*, 429 U.S. at 106). To state a claim for deliberate indifference, a plaintiff must show "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Whether the inmate suffered from a serious medical need is an objective inquiry, but whether officials were deliberately indifferent is a subjective one. *Vandevender v. Sass, 970 F.3d 972, 975 (8th Cir. 2020).* That subjective inquiry assesses whether the prison officials knew of the risk and disregarded it, proof of which requires "showing of a mental state 'akin to criminal recklessness,' " *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (quoting *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).

Courts have repeatedly noted that a prisoner's "difference of opinion over matters of expert medical judgment or a prescribed course of medical treatment fails to state a federal constitutional question." *See, e.g.*, *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981). Though disagreement with a prescribed treatment is insufficient to state a deliberate indifference claim, "a total deprivation of care is not a necessary condition for

finding a constitutional violation: '[g]rossly incompetent or inadequate care can also constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment.'" *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

A defendant may also be liable under the Eighth Amendment for intentionally delaying access to medical care. *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (citing *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002)). Whether a delay in providing prescribed treatment constitutes deliberate indifference is a fact-specific inquiry into whether the delay was "medically unacceptable under the circumstances." *Harper v. Ryan*, 2020 WL 836824, at *21 (D. Ariz. Feb. 20, 2020). A delay need not inflict a permanent injury to sustain a deliberate indifference claim; the infliction of unnecessary pain that serves no penological purpose is itself actionable. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

Defendants concede for the purposes of this motion that Plaintiff's complaint alleges facts sufficient to meet the objective prong of the deliberate indifference test, but argue he has failed to allege facts sufficient to establish the subjective prong. To the contrary, Defendants assert, far from establishing deliberate indifference to his condition, Plaintiff's Complaint "demonstrates that he has continuously received care for his condition while incarcerated [and that] he was regularly seen at health services by nursing staff, as well as Dr. Shaman and Dr. Lorbiecki." Dkt. No. 31 at 9. At best, Defendants assert, Plaintiff's allegations are mere disagreement with his prescribed treatment. *Id.* at 11.

Defendants' arguments are unavailing. First, though it is well established that an inmate's "difference of opinion over matters of expert medical judgment or a prescribed course of medical treatment fails to state a federal constitutional question," *Randall*, 642 F.2d at 308, Defendants' suggestion that Plaintiff's complaint amounts to no more than a disagreement with his prescribed course of treatment misapprehends (if not mischaracterizes) his allegations. Plaintiff has taken no issue with his physicians' prescribed course of treatment. To the contrary, Plaintiff alleges not that he disagreed with the prescribed course of treatment, but that it was not implemented in a timely fashion.

Similarly, Defendants' suggestion that there can be no deliberate indifference because Plaintiff "was regularly seen at health services" misses the point. Indeed, according to Plaintiff the fact that he *was* regularly seen is evidence of Defendants' deliberate indifference. Plaintiff alleges that even though he received some (though not all) of his prescribed treatment, Defendants' months-long delay in providing that care evidences Defendants' deliberate indifference to his serious medical needs. Defendants' head-in-the-sand argument simply fails to address Plaintiff's allegations. By ignoring Plaintiff's argument Defendants have failed to address the central issue— whether the facts that Plaintiff has alleged state a claim of deliberate indifference sufficient to survive this motion to dismiss. Defendants' focus on the treatment Plaintiff received ignores the gravamen of Plaintiff's claim, which focuses on *when* he received it.[5]

---

[5] And, to be clear, one prescribed treatment—the urodynamic study—was never undertaken prior to the filing of the Complaint. Whether it has occurred since is of no consequence to the Court's analysis.

In short, Defendants' arguments miss the mark. Plaintiff need not allege he received *no* treatment whatsoever to make a prima facie case for deliberate indifference. A delay in prescribed treatment that causes unnecessary pain and serves no penological purpose can sustain a deliberate indifference claim alone, and Plaintiff has alleged the delay in acting on his physician's recommendations caused him unnecessary and severe pain and worsened his condition. *See Estelle*, 429 U.S. 97 at 104–05.

Plaintiff alleges Defendants were aware of his urologic condition, neurogenic bladder,[6] upon his intake in April, 2020. Over the next twenty months, Plaintiff alleges—often in great detail—that he repeatedly suffered severe pain and urethral bleeding for which he was hospitalized and/or treated in the emergency room on five separate occasions. The hospital providers and Dr. Shaman recommended on several occasions that he be seen—quickly—by a urologist. Yet these referrals either never happened or were delayed for so long that Plaintiff's physicians questioned why they were delayed, giving rise to a reasonable inference that there was no valid medical reason for the delay.

In addition, when Plaintiff's condition continued to worsen he was referred for a procedure by his urologist Dr. Tabibian. Even though Dr. Tabibian ordered the procedure to be undertaken "within the next few weeks," eight months later the procedure was still not scheduled. Again, Dr. Tabibian and Dr. Shaman questioned the reason for the delay, suggesting it lacked a medical justification.

---

[6] This diagnosis—neurogenic bladder—is reflected in Ex. E to Plaintiff's Complaint.

Even routine medical appointments inside MCF-Faribault and seemingly minor matters were delayed. For example, on October 31, 2022, Plaintiff suffered "excruciating abdominal pain," sought an immediate medical appointment, but was not seen for almost a month. Similarly, Dr. Shaman ordered Plaintiff be put on a lower bunk restriction (because having to climb into the upper bunk aggravated his pain and worsened his condition) that was not implemented for 18 days, all the while causing Plaintiff to suffer significant pain.

Plaintiff has alleged sufficient facts in his complaint to establish knowledge on the part of Defendants Blanchard and Paulson. Defendant Blanchard is "specifically responsible for assuring scheduling of medical appointments outside the prison when a prisoner needs specialized treatment or evaluation," such as the repeated (delayed) referrals to a urologist and the (never scheduled) urodynamic study.

Similarly, Defendant Paulson is the nursing supervisor at MCF-Faribault. It is a reasonable inference that she would have been aware of Plaintiff's multiple trips to the local hospital and his two-day admission to Abbott Northwestern in Minneapolis. Moreover, Plaintiff alleges that his mother called Defendant Paulson, her "main point of contact," on at least five occasions to inquire why Plaintiff was not receiving the care he was prescribed.

In light of these factual allegations it cannot be said that Plaintiff has failed to plausibly plead his claim. Based on these allegations he is certainly entitled to move forward with discovery. What that discovery will reveal and whether Plaintiff will survive

summary judgment or prevail at trial cannot now be said. But it doesn't have to be. His individual-capacity claims against Defendants Paulson and Blanchard move forward.[7]

His claims against Defendants Beltz and Schnell are a different matter. Defendant Beltz is the Warden at MCF-Faribault; Defendant Schnell is the Commissioner of Corrections. Plaintiff has not alleged that either Defendant had personal or direct responsibility for healthcare at MCF-Faribault. While Plaintiff has alleged that his mother called each of their offices once, a single phone call to the Warden and the Commissioner is insufficient to plausibly state a claim for deliberate indifference by these individuals. It is axiomatic that to state a claim against an individual Defendant in their individual capacities, Plaintiff must allege facts asserting their personal involvement, because the respondeat superior doctrine does not apply to § 1983 claims. *Glick v. Sargent*, 696 F.2d 413, 415 (8th Cir. 1983); *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007). A prison official's general responsibility for supervising the operations of a prison is insufficient to establish individual liability. *See Glick*, 696 F.2d at 414-15.

At present, Plaintiff's claims against Defendants Beltz and Schnell plead liability based only on their supervisory role. A supervisor may only be held individually liable

---

[7] In his complaint Plaintiff identified three specific delays in treatment: the seven-month delay after his first hospitalization before he was referred to a urologist; the denial in referring him for a "urodynamic study" recommended by his urologist; and the 18-day delay in moving him to a lower bunk. Whether or not each of these individual delays, standing alone, would state a claim for deliberate indifference is of no consequence. Taken together, and in conjunction with other delays in treatment and other conduct alleged in the complaint, Plaintiff has alleged a pattern of delayed, denied and inadequate treatment that plausibly pleads a claim for deliberate indifference against Defendants Paulson and Blanchard. Discovery in this case may well identify other individuals against whom such claims might properly be asserted.

under § 1983 "if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Laganiere v. County of Olmsted*, 772 F.3d 1114, 1117 (8th Cir. 2014) (citing *Wever v. Lincoln Cnty.,* 388 F.3d 601, 606 (8th Cir.2004)). Plaintiff has alleged no such facts in this case.

### E.    Qualified Immunity

Defendants argue qualified immunity bars Plaintiff's claims against them in their individual capacities. Dkt. No. 31 at 17-18. Because Plaintiff has failed to plead sufficient facts to plausibly state claims against Defendants Schnell and Beltz the Court need not address qualified immunity as to them. As to Defendants Paulson and Blanchard the qualified immunity argument fails.

Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir.2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks omitted)).

When determining whether defendants are entitled to qualified immunity, the Court considers "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Id.* (quotation omitted). Section 1983 imposes liability only on state officials who are directly and personally involved in depriving constitutional rights. *See Rizzo v. Goode*, 423 U.S. 362, 376-77 (1976).

Here, as this Court has found, Plaintiff has alleged facts that, if proven, could demonstrate deprivation of his Eighth Amendment rights by Defendants Paulson and Blanchard. Moreover, the right to be free of cruel and unusual punishment due to deliberate indifference to an inmate's serious medical needs is well established. As stated by the Supreme Court in 1976:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, supra, at 173, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). That this right extends to unreasonable delays in providing treatment as well as the outright denial of treatment is also well established. *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015). Plaintiff's right to adequate medical care was well established at the time of the alleged deprivations. Therefore, qualified immunity does not bar Plaintiff's claims against Defendants Paulson and Blanchard.

### 2. The Fourteenth Amendment claim

Plaintiff asserts the DOC Defendants violated his Due Process Rights under the Fourteenth Amendment by "failing and refusing to provide extensive health care and treatment." Dkt. No. 1 at 16. Plaintiff makes no further argument supporting a due process violation claim or differentiating his Fourteenth Amendment claim from his Eighth Amendment claim.

To the extent Plaintiff is attempting to raise a substantive due process claim, such a claim would be "essentially coextensive with Eighth Amendment prohibitions against cruel and unusual punishment…[which] serves as the primary source of protection for convicted prisoners." *Brown v. Chandler*, 111 F.App'x 972, 976 (10th Cir. 2004). Where a specific constitutional provision "provides an explicit textual source of constitutional protection" against a particular type of government conduct, courts must assess such claims under that explicit provision and not under the Fourteenth Amendment's "more generalized notion" of due process. *Conn v. Gabbert*, 526 U.S. 286, 293 (1999). Because Plaintiff has not alleged any specific facts that support a Fourteenth Amendment due process claim distinct from his Eighth Amendment claim, his due process claims must be dismissed.

## III.    Plaintiff's State Law Claims

### A.    Constitutional and Statutory Claims

In addition to his § 1983 claims Plaintiff asserts claims under the Minnesota Constitution, Art. 1, Sections 5 and 7, as well as under Minn. Stat. § 241.021 subds. 1 and 4 & Minn. R. 2911.5800 subps. 4 and 8. Article 1, Section 5 of the Minnesota Constitution prohibits cruel or unusual punishments; Article 1, Section 7 prohibits deprivation of life or liberty without due process; Minn. Stat. § 241.021 subds. 1 and 4 set minimum standards for correctional facilities licensure and supervision pertaining to healthcare treatment for inmates; and Minn. R. 2911.5800, subps. 4 and 8 pertain to emergency healthcare and health complaints in BOP facilities. Plaintiff's claims under these authorities fail for a common reason.

Minnesota courts do not recognize a private cause of action unless the legislature has provided for such an action, either in a statute's express terms or by clear implication. *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007); *see also Branson v. Piper*, 2017 WL 9249421, at *5 (D. Minn. May 3, 2017) (recommending dismissal of state law claims under Minn. Stat. § 144.651, the Minnesota health care bill of rights, in part because that statute does not give rise to a private cause action).

Minnesota courts have repeatedly declined to find causes of action for damages under the Minnesota Constitution. *See Mitchell v. Steffen,* 487 N.W.2d 896, 905 (Minn. Ct. App.1992) (finding that even if cause of action for damages existed under the Minnesota Constitution, sovereign immunity barred torts for deprivation of constitutional rights), *aff'd on other grounds,* 504 N.W.2d 198 (Minn.1993); *Bird v. State, Dep't of Pub. Safety,* 375 N.W.2d 36, 40 (Minn. Ct. App. 1985) (recognizing that Minnesota Supreme Court has not recognized any tort for the violation of due process rights). *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008).

Further, neither the statute nor rules Plaintiff has invoked provide for a private cause of action. See Minn. Stat. § 241.021 subds. 1 or 4; Minn. R. 2911.5800. Nor has any court found that they do. Accordingly, Plaintiff's claims for damages under these constitutional provisions, statutes and rules should be dismissed for failure to state a legally cognizable claim for relief.

### B.    Common Law Claims

Finally, Plaintiff asserts common law negligence claims against every Defendant based on his allegations of inadequate medical care. Dkt. No. 1 at 19. Defendants argue that Plaintiff's tort claims should be dismissed on jurisdictional grounds. Dkt. No. 31

at 21. Specifically, Defendants assert that because Plaintiff has failed to plausibly allege a federal claim (over which the Court has original jurisdiction) there is no basis for the Court's supplemental jurisdiction over Plaintiff's tort claims. *Id.* Defendants have made no arguments as to the merits of Plaintiff's negligence claims.

Because this Court has determined that Plaintiff has alleged a plausible § 1983 action against two named Defendants, it is proper for the Court to exercise its supplemental jurisdiction over the common law claims. The motion to dismiss these claims should be denied.

## RECOMMENDATION

For the reasons discussed above, the Court RECOMMENDS that

1. Defendants' Motion to Dismiss [Dkt. No. 30] be GRANTED as follows:

   a. That Plaintiff's federal claims against Defendants Minnesota Department of Corrections, Paul Schnell and Tracy Beltz be dismissed in their entirety with prejudice on the merits; except that the claims against Defendants Schnell and Beltz in their individual capacities be dismissed without prejudice;

   b. That Plaintiff's Fourteenth Amendment claim against Defendant Centurion of Minnesota be dismissed with prejudice and his Eighth Amendment claim be dismissed without prejudice;

   c. That Plaintiff's Official Capacity claims against Defendants Ann Blanchard and Michelle Paulson be dismissed in their entirety and with prejudice on the merits;

d. That Plaintiff's Fourteenth Amendment claims against Defendants Ann Blanchard and Michelle Paulson be dismissed in their entirety and with prejudice on the merits;

e. That Plaintiff's claim for Injunctive Relief against Defendant Paul Schnell be dismissed in its entirety and with prejudice on the merits;

f. That Plaintiff's claims against all Defendants arising under Article I, Sections 5 and 7 of the Minnesota Constitution be dismissed in their entirety and with prejudice on the merits;

g. That Plaintiff's claims against Defendant Paul Schnell arising under Minnesota Statute Chapter 241 be dismissed in their entirety and with prejudice on the merits;

h. That Plaintiff's claims against Defendants Minnesota Department of Corrections, Paul Schnell, Tracy Beltz, Ann Blanchard and Michelle Paulson arising under Minnesota rule 2911.5800, subps. 4 and 8 be dismissed in their entirety and with prejudice on the merits;

2. Defendants' Motion to Dismiss [Dkt. No. 30] be DENIED in all other respects.


Dated: August 4, 2023            ____s/David T. Schultz_____
                                      DAVID T. SCHULTZ
                                      United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being

served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).